and and if there are any questions, please feel free to ask. Thank you. Good morning, and may it please the court, William Most for Appellants, the Brown family. I'm here with Tarak Kanat and my co-counsel. In 2021, during a call for service, New Orleans police officer Derek Burmaster entered plaintiff's private property and shot their 16-week-old puppy named Apollo. Apollo stood 18 inches tall, weighed 22 pounds, and was too young to bark. He was roughly the size of a large cat. Apollo died, and Officer Burmaster's partner was wounded by the gunfire. In Ramirez v. Killian, this court articulated the well-established constitutional rule that applies here. A police officer killing a pet dog is reasonable only if the dog, quote, poses an immediate danger and the use of force is unavoidable. Neither was clearly true in this case, and so the trial court denied summary judgment on qualified immunity. And this court, in an interlocutory appeal, affirmed the denial of qualified immunity. And then at trial, the jury concluded that Officer Burmaster, quote, acted in an objectively unreasonable manner by killing Apollo. In other words, that he violated the Constitution. But Burmaster still wasn't held liable for the constitutional violation because the judge put the second purely legal question of qualified immunity to the jury to answer. That was an error because Ramirez v. Killian's other holding was that when qualified immunity is denied at summary judgment, it should not go again to the jury to decide again. Even the parties agreed about that in this case. The parties twice stipulated before trial that the jury should not decide qualified immunity. But despite those two stipulations, the trial court put it to the jury anyway. That was the second error. And finally, the trial court's third error was in how it treated the city of New Orleans' liability. At trial, the jury concluded that, quote, the city of New Orleans is liable for a violation of plaintiff's constitutional rights. But confusingly, the jury also found that the city's policies did not cause the killing. In a situation like that, courts have two options. Either find some way to harmonize those seemingly contradictory answers or alternatively order a new trial on that issue. But the trial court here did neither. Instead, it simply disregarded the jury's finding that the city of New Orleans was liable and entered judgment for the city despite that finding of liability. We ask for reversal on any or all of these grounds, and I'm happy to answer questions. Now, why can't it be clearly established at all? That's something that went on for a while. To me, the district court didn't simply hand the jury a pre-floating legal question and instructed the jury on a clearly established, well-founded principle. They didn't let the jury apply those principles against the city of New Orleans. And in the Fifth Circuit, unlike most other circuits, the jury can decide that if the issue has not been decided before trial. So this Court has long held, this is in McCoy, that in some limited circumstances, juries can decide qualified immunity, which is strange because the second question of qualified immunity this Court has held is a purely legal question. The Supreme Court has held that also. But in some circumstances where qualified immunity is not resolved before trial, the jury can decide it under this Court's case law. And then in Ramirez, this Court articulated what it means to decide qualified immunity before trial. What it said was that when a trial court or a court of appeal denies qualified immunity on summary judgment, what it is saying is there are two competing versions of the facts here. The plaintiffs and the defendants. And if the jury were to believe the plaintiff's version of the facts, then that would violate clearly established law. So summary judgment denied. And that's what happened here. The trial court and the court of appeal both said if the jury believes plaintiff's version of the facts, then it would violate clearly established law. And so the only thing that's left for the jury to do is to decide which of the versions of the facts is the correct one. And so Ramirez v. Killian said this precisely. It said, quote, this is pages 429 to 430, the jury decides the factual question of whether the officer violated the plaintiff's right. The first step of the qualified immunity analysis. It does not decide the purely legal question of whether the officer's actions were objectively reasonable in light of clearly established law. The second step. And then it sort of explained it further. It said, quote, in other words, when a plaintiff's claim survives the defendant's qualified immunity defense at summary judgment and proceeds to trial, there has already been necessarily a judicial determination of the second qualified immunity step. And then the question at trial is solely one of fact. It would be strange to have a trial court say if the facts are the plaintiff's way, it violates clearly established law. Have the court of appeal then say, agree and say if the facts are the way the plaintiff says, it violates clearly established law. And then give the jury an option to sort of overrule that legal determination of two different courts. I haven't found it.  There's a language in Ramirez that seems certainly favorable to yourself. And I think you read it because it's read broadly. It kind of sounds like step two. Follow your heart. But we keep reading Ramirez. And it also kind of reaffirmed some older assertive case law that these disputed material facts are made from a, quote, relative to a view. That's the phrase in Ramirez. And a properly inspected jury may decide the question. So it seems a better plan to inform the jury passages and not use them as the reconcilable. So I understand your point, Your Honor. But I don't read Ramirez. And Ramirez doesn't say categorically the second question of qualified immunity is always for a judge. That is what 10 out of 12 circuits have said. But it says under disputed material facts, disputed material facts that were made relative to a view that the jury can suss out those facts.  And that's what is exactly supposed to happen. The jury is supposed to suss out the facts. What the jury is not supposed to do is determine what was the clearly established law in 2021. The jury doesn't have the capability to do that. It's not presented with the ability to search case law. It doesn't define what is the clearly established law. And when the QI complies, turns on the disputed historical facts of trial, the jury can resolve those factual disputes. But it is applying the district court's instructions that define the clearly established law. Maybe we're talking about. Well, I think the way to think about it is that there would be no way for the jury to do so. Because if the jury in question one of the verdict forum finds that Burmaster acted in an objectively unreasonable manner, it's using the jury instructions about that to determine that. It couldn't then go on to say, but it didn't violate clearly established law at the time. It's the only thing the jury has is what the court has instructed about the law. It has no ability to find other sources of law. And so under your reading, Judge, I think there would be a conflict between questions one and two of the verdict forum. The first, the two steps of qualified immunity. If you compare the verdict forums in this case and in Ramirez, Ramirez has an answer to the question. But isn't essentially that a separate step? I mean, if we're talking about the evidence that no reasonable officer could be issuing the law at all, isn't that essentially a clearly established status? Yes. So in Ramirez, the jury was asked to decide qualified immunity. And the jury in that case both found that there was a constitutional violation and no qualified immunity. And then the trial court thereafter did a directed verdict on the issue saying there had to be additional evidence to deny qualified immunity that wasn't put on a trial. And what the Fifth Circuit said in Ramirez was, that's wrong, right? There was no need for any additional reasonable officer evidence. Because in this kind of scenario, qualified immunity should not be put to a jury. I mean, it says, quote, the jury does not decide the purely legal question of whether the officer's actions were objectively reasonable. So that was, as I understood it, this court explaining why what the trial court did was wrong. Because this question should have never gone to the jury in the first place. And so there's no need to change the law here. And I don't even think Ramirez changed the law. It simply articulated with more specificity what was the longstanding rule, which was that qualified immunity can go to a jury if it hasn't been resolved at trial. And an open question somewhat was, well, what does it mean to be resolved before trial? And in Ramirez, the court said, if you've decided the issue on summary judgment, it necessarily means these facts, if read the plaintiff's way, would violate clearly established law. Sure. So turning to the city, this is the question of the city's liability. And so the verdict form here had two questions, four and five. The first one asked, did plaintiffs prove by preponderance of the evidence the defendant of the city of New Orleans is liable for a violation for several reasons? The jury said yes. In the next question, they're asked, did the policies with respect to training, supervision, or discipline cause the killing? And they said no. At first blush, those appear contradictory. What the courts have told us, the Supreme Court and this circuit have said, is that our task is to find any way to harmonize those, even by exegesis, if necessary. And so plaintiffs have offered a proposed way of harmonizing. I think it stretches the language somewhat. It's not the most natural reading. But our conclusion is that one way to put these two together and have them both be true is to say that the city was liable because of what its policies and supervision left out. And so what was left in was not what caused the killing. Now, that is not the most natural reading of these words. But the courts have directed us to look for any reading that could harmonize them. I hope that you can start with the descriptive of their training and supervise and discipline. As for the role of the policy or the custom of the hearing, that seems to be coming to the same thing, I think. You seem to be saying that there were no causation effects. Some of it comes to the experiment of the policy. Right. The liability is that it can actually be killed. The training is to be done at the discipline. I bet. But the instruction is to treat it as a training to supervise. That is the role of the policy or the custom.  And that's why I agree. I don't think this is the most natural reading of those words. But it is a reading that I think could be put on those words in a logically intelligible way. And if there is no way to harmonize these, the remedy is a new trial on that issue. Why is that important? I mean, it's what we've asked for, but we believe in the conclusion of the context, rather than a trial. Yes. Why are information courts not approving of that? Yes, because the courts have said in a range of cases, in Atlantic and Gulf stevedores, that was the U.S. Supreme Court, Johnson v. Tidewater Marine Services, that's this court, that really the first thing that has to be done is see if there's any way, any, quote, view of the case that makes the jury's answers to special interrogatories consistent. Courts must attempt to reconcile the jury's finding by exegesis, if necessary. So I think the first step is, is there any reading of this that both acknowledges liability in question four, and yet also acknowledges a lack of causation by the policies in question five. And we've offered a possible reading of this. The city has not, has not offered any way to both acknowledge liability and the causation question. But if, then if there is no harmonization, then the new trial is the other option. I don't see any case law supporting the idea that you can just disregard a jury's finding that the city is liable. So, I'm sorry, I'm reading too few. Yes. Your use of reformation, you're equating reformation with reconciliation or compensation. Yes, because, because what the, what the trial court judge did is look at these seemingly conflicting answers and entered judgment for the city of New Orleans, ignoring the liability question. And that, that's the one thing I think a trial court can't do. It could have found a way to harmonize them. It could have ordered a new trial, but it does not seem like one of the available options is just to scrap the question five. And I'll note the other error that we, we point out is that the parties stipulated that qualified immunity wouldn't be decided by the jury. And I think that part of the reason why the court overruled that stipulation was because there was a genuine confusion by the trial court about sort of the law of qualified immunity. This stood out to me as I was preparing for today. If you look at ROA 5900, the court says that it decided in its discretion, it would be manifestly unjust to enforce the stipulation, especially where the case law has indicated that qualified immunity is a question for the jury. And so the fifth circuit's case law is that qualified immunity usually should not be a question for a jury unless it hasn't been resolved before trial. So it's a narrow set of circumstances that allow it to go to the jury, but there are some. But the trial court seemed to have it flipped and suggested that it should almost always go to the jury. And so that's why it overrode the stipulation of the parties. I'll note the city has, the defendants have never said what they thought the stipulation meant, if not the plain language of it. They didn't say that below. They haven't said that in their brief. They just say that the trial court found that there was confusion over the meaning of it. Thank you. Good morning. May it please the court. Corwin St. Raymond on behalf of the appellees, Officer Burmaster in the city of New Orleans. Now, appellants do not accept the verdict in this matter. However, the verdict is just and it should not be disturbed. The instructions provided by the court were clear. They were not erroneous, and they correctly reflect the issues and the law. I'm going to begin with discussing the qualified immunity issue. Now, appellants are arguing because qualified immunity was denied at summary judgment, the issue of qualified immunity should not have gone to the jury. And that's not the law in this circuit. This court has repeatedly held when genuine disputes of material fact remain, qualified immunity may be submitted to the jury. Indeed, in this very case, during the interlocutory appeal, this court held that factual disputes remained for the jury to decide. Because factual disputes remained and survived summary judgment, the district court correctly followed Fifth Circuit procedure in allowing the qualified immunity. Now, appellants rely heavily on Ramirez versus Killian, but Ramirez doesn't stand for what they claim. In Ramirez, the jury rejected defendant was entitled to qualified immunity. And the court reversed the district court's attempt to set aside that finding. This court determined that the factual disputes had been resolved by the jury. And in this case, appellants are attempting to set aside the jury verdict like the district court judge improperly did in Ramirez. And so the Ramirez case reinforces rather than prohibits the jury's role in resolving disputed qualified immunity facts. Ramirez prohibits a district court from overturning a jury verdict because the plaintiff failed to produce reasonable officer evidence beyond the jury's own factual findings. And Ramirez says nothing about whether a jury may be asked to resolve the qualified immunity question after the jury makes a determination on the constitutional question. And this court was not asked, and it did not decide whether qualified immunity should not be submitted to the jury as a separate jury instruction. Some important points about Ramirez are that Ramirez does not restructure the case with Instruction 10.3. In fact, the jury was charged in Ramirez with Instruction 10.3. And the court did not find that the verdict form in Ramirez was defective. Indeed, the verdict delivered by the jury in Ramirez was upheld by this court. That's consistent with the holdings of this court. McCoy v. Hernandez, it's a Fifth Circuit case, expressly states that if qualified immunity is not resolved before trial, the defense goes to the jury. In Holmes v. Reddick, a case in 2024 decided weeks after Ramirez, that confirms the same exact principle. There was no error in allowing the jury to decide if Burmaster was entitled to qualified immunity. Appellant's position is just wrong. In the mere existence of Pattern Instruction 10.3 contemplates that a jury will decide qualified immunity in accordance with that instruction. The forward to the Pattern Jury Instructions of the Fifth Circuit reflect that a committee reviewed those instructions and intended the instructions to be balanced, accurate, and user-friendly. More than a hundred judges, attorneys, and law professors participated in preparing those instructions. And those instructions are heavily footnoted, and the footnotes are updated regularly. I point to Instruction 10.3, which cites the Fifth Circuit's 2019 ruling in Mason v. Fall, which confirms that an officer can violate the Fourth Amendment and still be entitled to qualified immunity. And procedurally, Mason v. Fall mirrors the case at bar for a number of reasons. Both cases, qualified immunity was taken up before trial, and the court found that issues remained concerning the availability of qualified immunity. And both Mason and this case proceeded to trial, and the jury found that officers were objectively unreasonable, but were also entitled to qualified immunity. And that's exactly what the jury found in this case. Burmester was found to have violated the Fourth Amendment, and he was also found to be entitled to qualified immunity. And this court upheld the judgment in Mason because it was not an inconsistent verdict. Recently, the Fifth Circuit has upheld this type of verdict. As I stated, it was upheld in Mason v. Fall in 2019, and it was upheld just last year in Trabucco v. Riviera. Now the Trabucco verdict form was substantially like the verdict form in our case. First, the jury was asked if Officer Riviera violated the Fourth Amendment, and then he was asked if he was entitled to qualified immunity. In our case, the jury was presented with a near word-for-word copy of the Fifth Circuit's pattern jury instructions for qualified immunity. And the district court made use of Instruction 10.3, and Officer Burmester relied on Instruction 10.3. And the instruction was provided to the jury before they answered the pertinent question, is Derek Burmester entitled to qualified immunity? The jury said yes. The jury determined that other officers in Burmester's position could have believed the killing of the dog under the circumstances that Burmester faced was lawful. The jury's finding is clear. The specific circumstances were sufficiently ambiguous that a reasonable officer could have believed the killing of the dog was lawful. Now, appellant's briefing to this court is essentially a rehashing of summary judgment evidence that the district court and this court determined was disputed. But the jury was presented with the evidence, the testimony. They saw the video. They judged credibility of witnesses. They heard the opinions of plaintiff's experts. And they concluded another reasonable officer in the same position would have made the same decision. Now, the United States Supreme Court in Ortiz v. Jordan, which is 562 U.S. 180, has stated, once the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary judgment motion. A qualified immunity defense,  does not vanish when a district court declines to rule on the plea summarily. The plea remains available to defending officials at trial. But at that stage, the defense must be evaluated in light of the character and quality of evidence received in court. And when they're talking about in court, they're talking about the trial, the trial of this matter. Now, appellants do not even address the evidence that was submitted to the jury at trial. And based on the evidence submitted at trial, the jury concluded not every reasonable official would have understood what officer Burmaster did was a violation of the law. And an officer can be found to have violated the law, but also found to have made an excusable mistake. And that's... Basically everything, Your Honor. I mean, the jury is examining the testimony of these witnesses. That's not, that wasn't in the initial appeal. And it's the initial appeal. Robert, Yes, I think so. I mean, I think that the testimony of officer Burmaster, I think the testimony of their expert,  there's the testimony of the other officers who did an investigation. There's, there's a bunch of, a bunch of evidence that was put forth before the trial court, the jury who ultimately made the decision. And I don't think that that decision can be disturbed unless there's a substantial and a radical doubt that they made the wrong decision based on the evidence that they were presented. In this case, this court is not presented with any of the evidence that was presented at trial. You're being presented with evidence that was at, that was presented during the summary judgment stage. And those facts were accepted as true at the summary judgment stage. And then the qualified immunity was denied at that point because material factual disputes existed. Your honor, I do not have the citation for that. You know, I haven't been able to make sense of it, your honor, I wasn't involved in making that stipulation.  I, I'd really, I have to assume that the, it was to stipulate that the jury couldn't decide legal questions. But to be quite honest with you, I'm really not sure. And I don't think the court understood what was going on. And also with that said, is that if the lawyers to this proceeding and the judge couldn't make sense of it, I'm certain Mr. Burmaster couldn't make sense of it either. And he's the only one that would be affected by this qualified immunity issue. And lawyers participate in these pretrial orders. I mean, it, it was affecting his rights. And I think the court in his, in his discretion made a decision that the plaintiff can present all the evidence that they want to the jury. And he'll present the question of qualified immunity in accordance with 10.3 and the jury will make the decision. There was a pretrial order that was signed by the parties and submitted to  And that's, I think the dispute arose during the pretrial conference. So I'm not sure if the court agreed with that particular stipulation. He didn't. I mean, he rejected it. I think it's the clearly established law prong issue. So whether, what the clearly established law was at the time, which this court pronounced and, and gave to the lower court and the lower court made that part of the jury instructions. And so the jury is uniquely positioned to assess whether qualified immunity should apply. And they heard all the evidence and the circumstances the officer faced and the officers, and understood what the officer's perception and what another officer might believe. And ultimately our jury found that Burmaster's belief that the dog posed a but it was excusable under qualified immunity. And so I'd like to address the issue regarding the jury's verdict concerning the Manel liability to city. And question four addressed whether the jury found that the city failed to  supervise or discipline Burmaster and appellants asked this court to disregard the explicit answer to question number five, where the jury found that the city's policies relating to the training supervision and discipline of Burmester did not cause the constitutional issue. I mean the injury and, and that's what municipal liability calls for. There has to be a causation finding and question five addressed causation. And I think that the clear language of that indicates that the jury concluded that even if there were some municipal shortcomings, those shortcomings did not cause the constitutional injury. And the Browns proposed interpretation requires this court to ignore the plain language of the verdict form and effectively delete specific causation. And that's not right. The verdict concerning causation actually aligns with the jury's comparative fault findings under Louisiana law. The jury apportioned responsibility to the Browns, the appellants and to officer Burmaster and to another officer. And that careful allocation demonstrates the deliberative and internally consistent verdict. And it's, there's, there was no confusion there. The Browns have failed to show the substantial and radical doubt required to disturb the jury verdicts. They haven't even presented the court with the testimony that was presented at trial and the district court carefully followed the fifth circuits law. It properly instructed the jury and it correctly denied post-trial relief. And this court should uphold the judgment. And unless there's any other questions, I will yield the remainder of my time. Thank you. Yes, Your Honors. I think my colleague largely conceded the stipulation issue there. Judge Willie, you asked him what the defendants thought that stipulation meant when it said that the jury would decide all issues except qualified immunity. And what he said was that, quote, the jury couldn't decide legal questions and they couldn't decide the clearly established prong, which is the second prong of qualified immunity. And that's exactly right. The jury is to decide the first prong of qualified immunity, which is the question of was the constitution violated. They're not supposed to decide the second prong, which is would that violate clearly established law. So as I hear it, the parties are in complete agreement about what that stipulation meant. Is there a minute to the pre-trial order? No. I don't think there is one. The court in minutes refers to the pre-trial order in the minutes of the pre-trial conference. So we have at ROA 1127 and ROA 4977, we have the two versions of the proposed pre-trial order signed first by plaintiff's counsel, Burmaster's counsel and the city's counsel, and then the second one by the plaintiff's counsel and all defendants'  And then the judge in the minutes refers to the pre-trial order, but it doesn't appear to be entered into the record. And my colleague also said that, suggested that Ramirez, he said, it says nothing about what the jury is supposed to do. And that's just flatly false. If you look at Ramirez at 429, 430, it says that when there's a denial of qualified immunity at summary judgment, quote, the jury, quote, does not decide the purely legal question of whether the officer's actions were objectively reasonable in light of the clearly established law, the second step. That that's the language of Ramirez. We can't, it is what it is. I think it, it makes a lot of sense in the context of McCoy trying to understand what does it mean for qualified immunity to be resolved before trial. And it, and it follows the basic apportionment of responsibility between judge and jury. Juries are supposed to find facts. That's step one. Judges are supposed to find issues of law. That's step two. Step two is a purely legal issue. So that second step is kind of like deciding whether an officer is entitled to qualified immunity. It's not a wrong historical fact. It's a conclusion that a jury makes that conclusion, not the judge. But under that reading, that would create a conflict between questions one and two of the verdict form, because question one was step one of qualified immunity. Were the officer's actions objectively unreasonable? So the second question is only about the purely legal question. So it would be like in your negligence tort case, if the jury was asked, you know, was the driver, you know, negligent. And then there's another question saying, you know, and something about is that clearly established law or something about the state of negligence law in Louisiana. And that would be clearly inappropriate to have a second purely legal question for the jury to decide after they've already decided the factual question that answers whether there was a tort or not. I'll also note that, oh, and my time is up. Sure. Just the references to Holmes and Tribuco, you can't read anything into those because of the party presentation rule, which the U.S. Supreme Court reaffirmed last week in Margolin, which is that if the parties haven't presented an issue, the court can't rule on it, which also means you can't read anything into the court's silence about it. And in neither Holmes nor Tribuco did the parties raise anything about the propriety of putting qualified immunity to the jury in the first place. Thank you.